UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

JOHN SIMON, JOAN SIMON, ANDREAS
KALLISTROS, KATHLEEN KALLISTROS,
NICHOLAS SERETIS, DESPINA SERETIS,
HARALAMPO KASOLAS, PALLIS
EVANGELLOS, ANASTASIA PALLIS, GLEN
DESASNTIS, LAWRENCE LODATO, MATHEW
BAILEY, ATHANASIA ZARKADAS, THEODORE
BATAGLIA, JEREMY BUTLER, FRANK
COPPINGER, VINCENT GALGANO, WILLIAM
MCCARTHY, JOEL SEVILLA, WILLIAM
WOODHULL, DIMITRIOS SERETIS

          Plaintiffs/Counter-Defendants,

vs.                                    Case No.  2:09-cv-376-FtM-29DNF

NATIONAL CITY MORTGAGE COMPANY,
NATIONAL CITY BANK,

          Defendants/Counter-Plaintiffs.
_____


**OPINION AND ORDER**

This matter comes before the Court on Defendants National City Mortgage Company and National City Bank's Motion to Dismiss and/or Transfer Venue (Doc. #27) filed on March 5, 2009.  Plaintiffs' filed a Response (Doc. #34) on April 6, 2009.  Defendants filed a Brief in Support of their Motion to Dismiss (Doc. #39) on April 15, 2009.  By a June 4, 2009 Order (Doc. #53), the Honorable Faith Hochberg granted the Motion to Transfer Venue portion and the case was transferred to this Court from the United States District Court, District of New Jersey.  In light of the transfer, the District Court of New Jersey declined to consider defendants Motion to Dismiss.  (Doc. #53, p. 4 n.5.)

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The former rule -- that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) -- has been retired by Twombly. James River Ins. Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Alternatively, dismissal is warranted if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).

**II.**

In early 2006, John and Joan Simon, Andreas and Kathleen Kallistros, Nicholas Seretis, Demetrios and Despina Seretis, Haralampo Kasolas, Evangelo and Anastasia Pallis, Glen DeSantis, Lawrence Lodato, Matthew Bailey, Athanasia Zarkadas, Theodore Bataglia, Jeremy Butler, Frank Coppinger, Vincent Galgano, William Mcarthy, Joel Sevilla and William Woodhull (collectively plaintiffs) organized a Joint Venture & Cooperative (the Joint Venture) to purchase parcels of land in Lehigh Acres, Florida. (Doc. #1, p. 4.) In or about March 2006, plaintiffs identified undeveloped lots, which each plaintiff would acquire separately, on which they would build homes through the Joint Venture to minimize costs. (Id.) Plaintiffs were eager to commence construction prior to January 1, 2007, due to new environmental regulations that were to take effect that would add delays and expense. (Id. at 6.)

In or about August 2006, Defendant National City Mortgage Company's (NCM) underwriting staff approved plaintiffs' loan applications. (Id. at 5.) Plaintiffs sought combination construction/permanent 30-year loans. (Id.) According to their loan agreements, plaintiffs were to pay only interest on the construction disbursements, and upon completion of construction the loan balance would become a 30-year self-amortizing loan secured by a mortgage on each respective property. (Id.) At the closing, NCM was to fund the plaintiffs' land acquisition costs, plus general contractor pre-construction expenses. (Id. at 6.) Thereafter, NCM

would issue disbursements based on the completion of construction phases in accordance with a schedule agreed upon by NCM, the general contractor, and plaintiffs. (Id.) The NCM loans required completion of construction by July 2007. (Id. at 8.) NCM issued conditional loan approvals of approximately $244,000 per plaintiff per lot. (Id. at 5.)

In reliance on the agreement with NCM, plaintiffs executed separate contracts to purchase lots. (Id. at 6.) Plaintiffs also executed construction contracts with Consolidated Construction Engineering (CCE). (Id.) After issuing loan commitments, NCM advised plaintiffs that it did not approve of CCE as a builder because CCE did not have active corporate status in Florida and did not hold a builder's license. (Id.) Plaintiffs then secured Naples Construction Company, LLC (Naples Construction) to be their builder of record. (Id.) NCM advised plaintiffs that to avoid the time it would take to re-submit the loan underwriting documentation for all of plaintiffs' loans, plaintiffs should stamp the existing construction contracts between CCE and plaintiffs with "Naples Construction - Wholly Owned Subsidiary of CCE." (Id. at 7.) Pursuant to NCM's advice, the loan documentation was stamped with "Naples Construction - Wholly Owned Subsidiary of CCE" and the plaintiffs' initialed the contracts where the stamp was applied. (Id.)

NCM closed on all but three of the plaintiffs' loans in October 2006. (Id. at 8.) At the time of the closings, NCM funded

-4-

plaintiffs' land acquisition costs and the initial construction disbursements of approximately $20,000 per loan. (Id.) However, instead of wiring the initial construction disbursements to Naples Construction, the new agreed-upon builder, NCM wired the disbursements to CCE. (Id.) Plaintiffs' learned of the error and contacted NCM. (Id.) NCM's Closing Department supervisor acknowledged the error, and for the last three loan closings properly wired the initial construction loan disbursements to Naples Construction. (Id.) Because several of the initial construction loan disbursements were wired to the wrong entity, plaintiffs were unable to obtain permits and commence construction before January 1, 2007, which subjected plaintiffs to the expense and added delays of conforming to the newly enacted regulations. (Id.) With regards to the three loans that had the initial construction disbursements properly wired, NCM failed to advance and/or include the impact fees payable to the County. (Id. at 11.)

The proprietors of CCE absconded with the money erroneously wired to CCE by NCM. NCM continued to charge interest on those funds, and assessed penalties when plaintiffs refused to make payments. (Id. at 12.) In or about June or July 2007, NCM began issuing default notices to plaintiffs, and sought to raise the interest rates on the loans because the construction was not completed pursuant to the contract. (Id. at 13.)

Subsequently, NCM refused to fund construction on twelve (12) of the plaintiffs' loans and allowed only six of the plaintiffs'

construction loans to go forward. (Id. at 14.) Plaintiffs allege that even for the six homes that continued construction, NCM did not uphold the loan contract. For example, NCM would process only one disbursement request per month per loan, resulting in a delay in construction; delayed in inspecting the construction site to confirm completion of work; claimed to have lost plaintiffs' files, resulting in an inability to process and pay disbursement requests; and refused to pay the total percentage of the disbursement amounts requested in accordance with the agreed upon schedule. (Id. at 15.) Due to the significant delays in construction, in December 2007, plaintiffs and Naples Construction determined that the construction of the homes was impossible. Naples Construction ceased all construction activities on all of the plaintiffs' properties. (Id. at 16.)

On or about November 10, 2008, plaintiffs filed the instant six-count Complaint. Count I alleges that NCM and its parent, National City Bank (NCB), violated The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692, *et seq*. Count II alleges that NCM and NCB materially breached the terms and conditions of the construction loan agreements. Count III alleges that NCM and NCB breached the implied covenants of good faith and fair dealing. Count IV alleges negligence by NCM and NCB. Count V alleges that NCM and NCB collected interest payments and closing fees despite their wrongful conduct, thus constituting unjust enrichment. Count

VI alleges that NCM breached its fiduciary duties to the plaintiffs, resulting in lender liability.

**III.**

Defendants' motion to dismiss argues that Counts I, IV, V and VI of the Complaint should be dismissed because each of these counts fails to state a claim under FED. R. CIV. P. 12(b)(6). (Doc. #27-1, p. 5.) Plaintiffs argue to the contrary on each count.

**Count I: Violation of the FDCPA**

Defendants argue that the FDCPA does not apply to them because they are not "debt collectors" within the meaning of the Act. Based upon the allegations in the Complaint, the Court agrees.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); LeBlanc v. Unifund CCR Partners, No. 08-16031, 2010 WL 1200691 at *3 (11th Cir. Mar. 30, 2010); Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 924 (11th Cir. 1997). In order to be subject to liability under the FDCPA, the person or entity must be a "debt collector." 15 U.S.C. § 1692(e). A "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or

> indirectly, debts owed or due or asserted to be owed or
> due another. . . . [T]he term includes any creditor who,
> in the process of collecting his own debts, uses any name
> other than his own which would indicate that a third
> person is collecting or attempting to collect such debts.

15 U.S.C. § 1692(a)(6). A "creditor" means "any person who offers or extends credit creating a debt or to whom a debt is owed . . .," and is expressly exempted from the FDCPA, 15 U.S.C. § 1692(a)(4), unless falling within the "false name" exception to the definition of debt collector. Thus, a creditor who collects in its own name and whose principal business is not debt collection is not subject to the FDCPA, Aubert v. Am. Gen. Fin., Inc., 137 F.3d 976, 978 (7th Cir. 1998), but a creditor who uses any name other than its own which indicates that a third person is collecting or attempting to collect the debt is a "debt collector" and subject to the FDCPA. Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235-36 (2d Cir. 1998).

The Complaint alleges that NCM, the lender in this case, is a wholly owned subsidiary of NCB, and the principal place of business of each are at the same location. (Doc. #1, ¶¶ 18-19.) To bring both defendants within the definition of "debt collector", the Complaint alleges that "NCM has used the name of NCB, and vice-versa, during any and all purported collection efforts improperly directed towards Plaintiffs." (Doc. #1, ¶ 100.) More specifically, the Complaint states:

> NCM has repeatedly used the name of NCB, and vice-versa,
> during any and all purported collection efforts
> improperly directed toward Plaintiffs. All NCM notices

> says [sic] "National City Mortgage, A Division of
> National City Bank."  This duplicitous use of names is
> expressly prohibited under the FDCPA.

(Doc. #1, ¶ 101.)  Plaintiffs allege that both NCM or NCB should be considered a "debt collector" under the "false name exception."

In evaluating whether there is a violation of the FDCPA the Court must apply the least sophisticated consumer standard. <u>LeBlanc</u>, 2010 WL 1200691 at *6; <u>Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168, 1175 (11th Cir. 1985).  "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. [ ] However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." <u>Id.</u> (internal citations and quotations omitted). Therefore, the issue is whether, under the least sophisticated consumer standard, it is plausible that a consumer would be deceived into believing the collection efforts were by an unrelated third party based upon correspondence which consistently stated it was by "National City Mortgage, A Division of National City Bank."

The Court concludes that even the least sophisticated consumer would know from the language on the notices that NCM and NCB were affiliated corporations and that the notices were seeking to collect on plaintiffs' notes and mortgages with NCM.  Thus, employing the least sophisticated consumer standard, the Court

-9-

finds that NCM and NCB are not "debt collectors" and thus are not subject to the FDCPA. Accordingly, defendants' motion to dismiss Count I is granted.

**Count IV: Negligence[1]**

Plaintiffs allege that "NCM's and NCB's conduct constitutes negligence in that they created reasonably foreseeable risks, but failed to take reasonable care." (Doc. #1, ¶ 114.) Defendants argue that plaintiffs' allegations relate to, arise out of, or directly depend upon the contract between plaintiffs and defendants. Defendants maintain that plaintiffs are essentially trying to assert a tort claim for the alleged breach of the loan contract.

While neither party expressly raises the Florida economic loss rule, the Court finds that it applies. "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indem. Ins. Co. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004); see also Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994)(citing Interstate Sec. Corp. v. Hayes Corp., 920 F.2d 769, 773 (11th Cir. 1991)). In the context of contractual privity, the economic loss rule "is designed to

---

[1]Plaintiffs assert that a conflicts analysis demonstrates Florida law governs the state law claims. Defendants assert it makes no difference because Florida and New Jersey law is the same with regard to the pertinent issues. The Court therefore applies Florida law.

prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Am. Aviation, 891 So. 2d at 536. One of the recognized exceptions, however, permits a tort action where the tort was committed independently of the contract breach. Id. at 537; see also, Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc., 184 Fed. Appx. 894, 902 (11th Cir. 2006); Vesta Constr. & Design, L.L.C. v. Lotspeich & Assocs., Inc., 974 So. 2d 1176, 1179 (Fla. 5th DCA 2008).

Plaintiffs allege that their negligence claim is separate and distinct from their contract claims against defendants. They state that the loan agreement does not "touch on the issue of selecting a builder of record for the subject loans, the approval of such builders as recipients of funds from Defendants, the amending of the underwriting paperwork which preceding the closing using the 'stamping' protocol directed by Defendants, the wiring instructions, and the amendment of the loan documents requested by Defendants so that Defendants' underwriting staff could avoid duplicating their underwriting." (Doc. #34, p. 27.) Plaintiffs argue that since the defendants rejected the first builder and recommended and used the "stamping" protocol, which may have led to the disbursement of funds to the wrong contractor, defendants were negligent.

Plaintiffs' tort claims are based on literally the same factual allegations that provide the basis of their breach of

-11-

contract claim.[2]  Since this claim is in the context of contractual privity and plaintiffs have failed to plead facts that show defendants committed a tort independent of the alleged breach of contract, the economic loss rule bars a cause of action for negligence and defendants' motion to dismiss Count IV is granted.

**Count V: Unjust Enrichment**

Plaintiffs allege that defendants' collection of interest payments and closing fees despite their wrongful conduct constitutes unjust enrichment. (Doc. #1, ¶ 117.)  Defendants argue that plaintiffs fail to state a claim for unjust enrichment because the relationship between plaintiffs and defendants is governed by express contract.

The elements for unjust enrichment are that "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005)(citations omitted).  An unjust enrichment claim proceeds on the theory that no express agreement governs.  Id. at 1227 n.10.

---

[2]Although the Complaint was filed in New Jersey, it runs afoul of the Eleventh Circuit's "shotgun" pleading rule by adopting all preceding paragraphs in each successive claim. Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997).

"[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment." Moynet v. Courtois, 8 So. 3d 377, 379 (Fla. 3d DCA 2009)(citing Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. 1st DCA 2008)).

In the instant case, there is an express agreement between plaintiffs and defendants -- namely the notes and mortgages on the properties at issue. Those agreements address the fact that plaintiffs were to pay only interest during construction. (Doc. #1, p. 5.) Essentially, plaintiffs seek damages for the interest payments that were made after defendants allegedly breached the contract.

The Court finds that because plaintiffs have sufficiently pled a breach of contract claim, and their unjust enrichment claim arises out of plaintiffs contractual relationship with defendants, Count V of the Complaint shall be dismissed for failure to state a claim.

**Count VI: Lender Liability**

Defendants argue that the general rule that lenders owe no duties to borrowers should apply in the instant case because plaintiffs have not plead any special circumstances that would create a fiduciary relationship between NCM and plaintiffs. (Doc. #27-1, p. 14-15.) Plaintiffs allege that NCM and plaintiffs had more than a mere lender-borrower relationship, which created fiduciary duties. Plaintiffs assert that NCM took on extra

-13-

services such as: inspector of construction work, holder of construction funds, and financial controller of plaintiffs' residential projects. (Doc. #1, ¶ 120.) Plaintiffs argue that NCM's breach of contract was "intentionally designed by NCM to avoid funding the loans after committing to them, and after Plaintiffs had already purchases the properties associated with each individual loan." (Id. at ¶ 122.)

"Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities. However, fiduciary relationships between lenders and customers have been found to exist in Florida, as well as other jurisdictions." First Nat'l Bank & Trust Co. v. Pack, 789 So. 2d 411, 414 (Fla. 4th DCA 2001)(quoting Capital Bank v. MVB, Inc., 644 So. 2d 515, 518-19 (Fla. 3d DCA 1994)). Fiduciary relationships can either be expressly created by contract, or can be implied in law based upon the relationship of the parties and the specific facts of the transaction. Id. An implied fiduciary relationship "may be found when confidence is reposed by one party and a trust accepted by the other." Id. at 415 (internal citation omitted). Fiduciary relationships have been found "where the lender 1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control." Capital Bank, 644 So. 2d at 519.

To determine whether there is an implied fiduciary duty the Court must conduct a fact intensive inquiry into the relationship of the parties and the specific facts of the transaction. Pack, 789 So. 2d at 415. Plaintiffs allege that NCM took on extra responsibilities and exerted extensive control over their loans which created a fiduciary duty. Defendants argue that it did not have any extra duties nor retained extensive control over plaintiffs' loans. Since at the motion to dismiss stage the Court must take the allegations in the light most favorable to plaintiffs, the Court will deny defendants' motion to dismiss Count VI because the claim is plausible given the allegations.[3]

Accordingly, it is now

**ORDERED:**

Defendants National City Mortgage Company and National City Bank's Motion to Dismiss and/or Transfer Venue (Doc. #27-1) is **GRANTED** as to Counts I, IV and V, and **DENIED** as to Count VI. Counts I, IV and V are dismissed without prejudice.

**DONE AND ORDERED** at Fort Myers, Florida, this __19th__ day of April, 2010.

*/s/ John E. Steele*
JOHN E. STEELE
United States District Judge

Copies: Counsel of record

---

[3]The Court notes, however, that the economic loss rule may bar plaintiffs' lender liability claim if it becomes apparent that the breach of fiduciary duty claim is dependant on the existence of the contract, Am. Aviation, Inc., 891 So. 2d at 537, and not due to defendants' performance of extra services or its extensive control over plaintiffs' loans.